IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CASCADIA WILDLANDS,
CENTER FOR BIOLOGICAL
DIVERSITY, and AUDUBON
SOCIETY OF PORTLAND,

       Plaintiffs,

    v.

JOHN KITZHABER, in his official
capacity as Governor of Oregon
and Chair of the State Land
Board; TED WHEELER and KATE
BROWN, in their official
capacity as members of the
State Land Board; DOUG DECKER,
in his official capacity as
Oregon State Forester with the
Oregon Department of Forestry;
LOUISE SOLLIDAY, in her official
capacity as Director of the
Department of State Lands; JOHN
BLACKWELL, in his official

Case No.  3:12-cv-00961-AA
OPINION AND ORDER

1 - OPINION & ORDER

capacity as Chair of the Oregon
Board of Forestry; SYBIL ACKERMAN,
CINDY DEACON WILLIAMS, NILS
CHRISTOFFERSEN, TOM INSKO, GARY
SPRINGER, and STEVE WILSON, in
their official capacity as Board
Members of the Oregon Board of
Forestry; TOM SAVAGE, in his
official capacity as District
Forester for the Astoria District;
JIM YOUNG, in his official capacity
as the District Forester for the
Coos District; ANDY WHITE, in his
official capacity as the District
Forester for the Forest Grove
District and DAN GOODY, in his
official capacity as the District
Forester for the Tillamook District,

   Defendants,

  v.

OREGON FOREST INDUSTRIES COUNCIL,
a non-profit corporation, DOUGLAS
TIMBER OPERATIONS, a non-profit
corporation, HAMPTON TREE FARMS
INC., an Oregon Corporation, SENECA
SAWMILL COMPANY, an Oregon
Corporation, and SCOTT TIMBER CO.,
an Oregon Corporation,

   Defendant-Intervenors,

  v.

ASSOCIATION OF OREGON COUNTIES,

   Defendant-Intervenor.

_____

2 - OPINION & ORDER

Christopher G. Winter
Tanya M. Sanerib
Crag Law Center
917 SW Oak Street, Suite 417
Portland, OR 97205

Daniel Kruse
Attorney At Law
130 South Park Street
Eugene, OR 97401

Nicholas Stanton Cady
Cascadia Wildlands
P.O. Box 10455
Eugene, OR 97440

R. Scott Jerger
Field & Jerger, LLP
621 SW Morrison Street, Suite 1225
Portland, OR 97205

Susan Jane M. Brown
Western Environmental Law Center
4107 NE Couch Street
Portland, OR 97232
        Attorneys for plaintiffs

Christina L. Beatty-Walters
Darsee Staley
Oregon Department of Justice
1515 SW 5th Avenue, Suite 410
Portland, OR 97201
        Attorneys for defendants

Dominic M. Carollo
Ronald S. Yockim
Law Offices of Ronald. S. Yockim
430 SE Main Street
P.O. Box 2456
Roseburg, OR 97470

Scott W. Horngren
American Forest Resource Council
5100 SW Macadam Blvd., Suite 350
Portland, OR 97239

Julie A. Weis
Haglund Kelley Jones & Wilder LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
      Attorneys for defendant-intervenors


AIKEN, Chief Judge:

This matter comes before the Court on motions for dismissal brought by State of Oregon defendants Kitzhaber et al (State defendants) and defendant-intervenors Oregon Forest Industries et al (defendant-intervenors). See Fed. R. Civ. P. 12(b)(6). Plaintiffs Cascadia Wildlands et al (plaintiffs) oppose the motions. Having reviewed the parties' briefs, the Court GRANTS in part and DENIES in part the motions for dismissal.

## BACKGROUND

Plaintiffs' Complaint alleges that State defendants are violating Section 9 of the Endangered Species Act (ESA), 16 U.S.C. § 1540(g), by (1) authorizing timber sales on specific tracts of forestland in Tillamook, Clatsop and Elliot State Forests; (2) approving forest management plans (FMP's), implementation plans (IP's), and annual operation plans (AOP's) which result in logging that causes the unpermitted "take" of

Page 4 - OPINION & ORDER

marbled murrelets; and (3) approving, adopting and implementing a "take avoidance" policy that causes unpermitted "take" of marbled murrelets. State defendants and defendant-intervenors move for the dismissal of the second portion of plaintiffs' Complaint. All defendants (defendants) also seek dismissal of plaintiffs' claim as to each of the individually-named Oregon Board of Forestry members on grounds of absolute legislative immunity, and as to each of the named members of the State Land Board and Louise Solliday on grounds of failure to allege actionable conduct. Defendant-intervenors additionally move for dismissal of the portion of plaintiffs' claim challenging the State's "take avoidance" policies.

## STANDARD

Where plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). For the purposes of a motion to dismiss, the complaint is liberally construed in favor of plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to

nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Bacca, 652 F.3d 1202, 1216, reh'g en banc denied, 659 F.3d 850 (9th Cir. 2011).

## DISCUSSION

Plaintiffs allege that, based on the forest management structure, State defendants are causing the take of marbled murrelets. While plaintiffs argue that they have only alleged a single all-encompassing claim in their Complaint, the Court is inclined to agree with defendants that plaintiffs have in fact alleged at least three separate but related claims. First, plaintiffs allege that some defendants are causing the take of marbled murrelets by auctioning specific timber sales. See, e.g., Compl. ¶¶ 3, 172, 179. Second, plaintiffs allege that some State defendants are causing a take by their "approval, adoption, and implementation" of forest management plans and policies which call for increased logging in the state forests at issue. See, e.g., Compl. ¶¶ 3, 5, 137. Third, plaintiffs allege that the "take avoidance" policy itself causes take. See, e.g., id. at ¶¶

4, 6, 190. Plaintiffs have also requested leave to file an
amended complaint "if the Court finds any merit in [d]efendants'
motions." Pls.' Resp. to Mot. Dismiss at 42. For the most part,
plaintiffs have declined to specify which particular defendants
are allegedly responsible for the above listed violation of the
ESA. Accordingly, the Court is left to determine whether
plaintiffs have sufficiently pled facially plausible claims with
regard to each State defendant.

## I. Forest Management Policy and Planning Structure

Oregon's state forests are governed by a three-tiered
management structure. Compl. ¶ 81. At the highest level are the
FMP's, which are intended to guide forest management policy for
40 or more years. Id. The two FMP's at issue in this case are the
Northwest FMP and the Elliot State FMP. Id. at ¶¶ 136, 146. FMP's
are reviewed and adopted by the Oregon Board of Forestry through
administrative rule-making. Id. at ¶ 37; OAR 629-035-0105(2)(a),
(c). The next level is the district-wide IP's, which set out ten-
year management plans. Compl. ¶ 81. The Northwest FMP governs the
districts of Tillamook, Forest Grove, and Astoria (and includes
the Tillamook and Clatsop State Forests); the Elliot State FMP
governs the Coos District (and includes the Elliot State Forest).
Id. at ¶¶ 41, 81, 136. At the lowest level, the districts develop

AOP's each year which are used to "describe smaller-scale, more specific management activities within the planning area." Id. at ¶ 81; OAR 629-035-0030(1).

The Oregon Department of Forestry and the Oregon Board of Forestry have primary authority over the majority of the Tillamook and Clatsop forests. Compl. ¶ 82. Two percent, however, of the Clatsop forest is Common School Fund lands, which is managed by the Oregon State Land Board and Oregon Department of Lands. Id. The State Land Board and Department of Lands own the majority of Elliott State Forest, which are also Common School Fund lands. Id. at ¶ 83. The State Land Board and Department of State Lands have, by contract, delegated management of the Elliott State Forest to the Oregon Department of Forestry and Board of Forestry, including planning and authorizing logging activities, as well as creating and approving AOP's. Id. Defendant Doug Decker, in his capacity as Oregon Department of Forestry State Forester, is responsible for managing state-owned forest lands, including selling forest products from those lands. Id. at ¶ 38. He also develops FMP's, IP's and AOP's, has the authority to designate land for fish and wildlife conservation, and is authorized to modify timber sale contracts. Id. Defendants Tom Savage, Jim Young, Andy White, and Dan Goody, in their

Page 8 - OPINION & ORDER

capacity as District Foresters, are responsible for overseeing the management of State Forests in their respective districts and approving IP's and AOP's. Id. at ¶ 41. They are also responsible for ensuring ESA compliance and approving the design of reserves set aside for marbled murrelets under the State's "take avoidance" policy which are called Marbled Murrelet Management Areas (MMMA's). Id.

## II. ESA STATUTORY SCHEME

The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." TVA v. Hill, 437 U.S. 153, 180 (1978). The ESA provides protections for the conservation of threatened and endangered species. 16 U.S.C. §§ 1531-44. Section 9 of the ESA, and regulations promulgated by the United States Fish and Wildlife Service, makes it unlawful for "any person" to "take" any threatened or endangered species of fish or wildlife, or for any person "to attempt to commit, solicit another person to commit, or cause to be committed" any such "take." 16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. §§ 17.21, 17.31.

"Take" means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct. 16 U.S.C. § 1532(19). "Harm" means an act which actually

kills or injures wildlife, including significant habitat
modification or degradation where it actually kills or injures
wildlife by significantly impairing essential behavioral
patterns, including breeding, feeding or sheltering. 50 C.F.R. §
17.3. "Harass" means an intentional or negligent act or omission
which creates the likelihood of injury to wildlife by annoying it
to such an extent as to disrupt normal behavioral patterns. Id.
The "take" prohibition of the ESA applies to all persons,
including any officer, employee, agent, department, or
instrumentality of . . . any state. 16 U.S.C. § 1532(13). The
species at issue in this suit, the marbled murrelet, is a small
sea bird which nests and reproduces in mature inland forests.
Compl. ¶¶ 53-63. As a threatened species, the marbled murrelet is
protected under Section 9 of ESA. Compl. ¶ 64; 50 C.F.R. §§
17.31(a), 17.21(a).

### III. Claim Against State Forester Decker

Defendants do not contend that plaintiffs have failed to
state a claim under ESA related to the specific auctioned and/or
noticed timber sales. Pl.'s Resp. to Mot. Dismiss at 6. The Court
understands this statement to mean that defendants do not dispute
the inclusion of State Forester Decker, at least insofar as he is
responsible for "selling forest products" from state-owned forest

Page 10 - OPINION & ORDER

lands. Compl. ¶ 38. Therefore, Mr. Decker will remain a defendant to the suit notwithstanding the motions to dismiss.

## IV. Claim Against Oregon Board of Forestry

Defendants argue that the Court should dismiss the claim against each of the individually-named Board of Forestry members on the grounds of absolute legislative immunity. It is well established that legislators are absolutely immune from civil suit for actions taken in their official lawmaking capacity. Bogan v. Scott-Harris, 523 U.S. 44, 48-49 (1998); Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). The Supreme Court has extended legislative immunity to officials outside of the legislative branch who perform quasi-legislative functions. Bogan, 523 U.S. at 55; see also Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 405 (1979). Legislative immunity extends both to claims for damages and claims for injunctive relief. Cmty. House, Inc. v. Boise, Idaho, 623 F.3d 945, 959 (9th Cir. 2010).

Plaintiffs contend that courts have distinguished claims brought against officials in their individual capacities from claims brought against officials in their official capacities, and have held that absolute immunity does not apply to officials sued in their official capacity for injunctive relief. Plaintiffs

cite several cases to support their assertion, but those cases are inapposite. For example, the issue in Fry v. Melaragno, 939 F.2d 832 (9th Cir. 1991), was whether official, not legislative, immunity was appropriate for a Special Assistant United States Attorney and Internal Revenue Service Officials. Similarly, Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518 (9th Cir. 1989), involved actions by Immigration and Naturalization agents, not legislators; Ashleman v. Pope, 793 F.2d 1072 (9th Cir. 1986)(en banc), discussed judicial and prosecutorial immunity. In Kentucky v. Graham, 473 U.S. 159 (1985), the issue was whether state law enforcement officers, the city, the county, and the state of Kentucky were immune from suit; legislative immunity was not at issue.

In Hanford Executive Mgmt. Employee Ass'n v. City of Hanford, 2011 WL 5825691, *16, *18 (E.D. Cal. Nov. 17, 2011), the court held that defendants, city council members, were entitled to absolute immunity in their individual capacities, but did not address whether defendants were entitled to absolute immunity in their official capacities. Finally, while Kaahumanu v. Cnty. of Maui, 315 F.3d 1215 (9th Cir. 2003), discussed legislative immunity, the court found that legislative immunity did not apply because the challenged action was non-legislative. Id. at 1223-

Page 12 - OPINION & ORDER

24. In short, plaintiffs have not presented any authority
examining legislative immunity which undermines the established
rule that legislative officials sued in their official capacities
are entitled to legislative immunity, including injunctive
relief. Cmty. House, 623 F.3d at 959.

Alternatively, plaintiffs argue that even if defendants are
entitled to legislative immunity, the motion to dismiss still
fails because they have not met their burden of establishing that
the actions of the Board of Forestry members are indeed
legislative. Absolute immunity attaches only to actions taken "in
the sphere of legitimate legislative activity." Tenney v.
Brandhove, 341 U.S. 367, 376 (1951). "Whether an act is
legislative turns on the nature of the act, rather than on the
motive or intent of the official performing it." Bogan, 523 U.S.
at 54. Therefore, this Court must evaluate whether Defendants'
actions, when "stripped of all considerations of intent and
motive," were legislative rather than administrative or
executive. Id.

The Ninth Circuit has formulated a four-step test to
determine whether an act is legislative for the purposes of
establishing absolute immunity. The court must consider: (1)
whether the act involves *ad hoc* decision making or the

formulation of policy; (2) whether the act applies to a few individuals or to the general public; (3) whether the act is formally legislative in character; and (4) whether the act bears all the hallmarks of traditional legislation. Kaahumanu, 315 F.3d at 1220 (internal quotations omitted).

Here, the challenged Board of Forestry acts were its adoptions of 2010 and 2011 revisions to the Northwest and Elliot FMPs that called for increased logging in order to increase revenues. Compl. ¶¶ 136, 137, 146, 147. An action may be found to be *ad hoc* if it is not part of a general policy formulation. See Bechard v. Rappold, 287 F.3d 827, 830 (9th Cir. 2002). Plaintiffs allege that the Board of Forestry "reviews and adopts" FMP's as administrative rules, Compl. ¶ 37, that the Board adopted revisions to the Northwest FMP in 2010, Compl. ¶ 136, and that the Board adopted revisions to the Elliott State FMP in 2011, Compl. ¶ 146. The Board of Forestry is charged to supervise forest policy and management. See Or. Rev. Stat. § 526.016(1). The rules adopted by the Board must comply with the Administrative Procedures Act (APA). It appears, based on the pleadings, that the members of the Board of Forestry adopted the FMP revisions pursuant to statute and in accordance with the APA, creating a general policy for forest management that includes

Page 14 - OPINION & ORDER

increased logging over a relatively long period of time. See OAR
629-035-0105(a)(c). In the Court's view, the action is a part of
a broad forest management policy. This factor therefore weighs in
favor of a legislative act for immunity purposes.

The second factor is whether the conduct at issue applies to
the public at large, or merely to an individual or narrow group
of individuals. Plaintiffs argue that "the Board is not passing
rules applicable to the public at large but rather making
decisions pursuant to existing state regulation about how
specific parcels or state-owned lands will be managed." Pls.'
Resp. to Mot. Dismiss at 31-32. Plaintiffs, however, do not
contend that the Board of Forestry is making decisions as to
specific parcels of land. Rather, the allegation is that, by
adopting a revised FMP that generally allows a ten percent
increase in logging over a number of years, certain tracts of
land will necessarily be impacted resulting in a take of marbled
murrelets. Compl. ¶¶ 136, 138, 145, 146, 147. Even assuming
plaintiffs' contention is true, the adoption of FMP's does not
impact only a single individual or a defined group of
individuals; adopting statewide rules for management of State
forests clearly impacts the public at large. In other words, the
Board's action was not targeting an individual or group of

individuals; rather, the action was part of the statutory scheme
for long-term management of wide-ranging forest lands. This
factor also weighs in favor of legislative activity.

The final factors of the test are whether the action taken
was formally legislative in character and whether it bears the
hallmark of traditional legislation. "Exercise of legislative
power depends not on [an action's] form, but upon 'whether they
contain matter which is properly to be regarded as legislative in
character and effect.'" INS v. Chadha, 462 U.S. 919, 952 (1983)
(internal citation omitted). The Court agrees with defendants
that, by adopting management plans, Board of Forestry members
created rules of general application that are statutory in nature
and arise out of a need to regulate conduct and management in
state forests. See Supreme Ct. of Va. v. Consumers Union of the
U.S., Inc., 443 U.S. 719, 791 (1980) (Supreme Court of Virginia
acted in a legislative capacity by promulgating rules of general
application that were statutory in character and arose out of a
need to regulate conduct for the protection of citizens). The
Court also agrees with defendants that the Board's actions bore
the hallmark of traditional legislation in that they reflected
discretionary, policymaking decisions implicating the balancing
act of priorities inherent in forest management. See Bogan, 523

U.S. at 55-56.

In sum, each of the four factors weighs in favor of finding the Board of Forestry members' adoption of the revised FMP's to be a legislative activity. Accordingly, the members of the Board of Forestry are absolutely immune from suit in their official capacities. The individual members of the Board of Forestry, including the Chair of the Board of Forestry, are therefore dismissed.

## V. Claims Against State Land Board and Department of State Lands Director Louise Solliday

Defendants argue that the portions of the claim against members of the State Land Board and the Director of the Department of State Lands, Louise Solliday (State Lands), should be dismissed for failure to state a claim. Defs.' Mem. in Supp. Mot. Dismiss at 13. Defendants argue that insofar as State Lands have delegated management authority of the Elliott State Forest to the Oregon Board of Forestry and the Oregon Department of Forestry, that plaintiffs have not, and cannot, allege facts identifying actions taken by members of State Lands that are grounds for liability. Id. at 13-14. Additionally, pursuant to State regulations, it was the Oregon Board of Forestry who adopted the Northwest FMP, which therefore limits State Lands'

potential management liability. Id. Plaintiffs argue, however, that they have indeed alleged numerous instances of actionable conduct by State Lands in their Complaint. Pls.' Resp. to Mot. Dismiss at 32-33.

As a threshold matter, each of the conduct allegations that Plaintiffs point to in support, employ the categorical term "defendants," rather than referencing a particular defendant. Plaintiffs submit that by categorically naming "defendants" in many of its allegations, they are explicitly alleging actionable conduct against *all* defendants. Id. at 39. However, this does not appear accurate. For example, the allegation in paragraph 161 could be fairly read to include any number of the defendants, depending on how "management" is interpreted; management might mean the highest-level management such as the governor or one of the board member defendants, or alternatively it could mean the State Forester or a District Forester, or some combination thereof. Moreover, the Court is unable to locate any factual basis in the Complaint for the assertion that State Lands have "adopted a ten-year implementation plan," "hire[d] contractors to perform surveys of potential marbled murrelet habitat," and "created MMMAs of a size or shape that fail to support marbled murrelet nesting behaviors." Compl. ¶¶ 114, 125, 185. Rather,

those functions are only performed by the District Foresters and possibly the State Forester. Id. at ¶¶ 38, 41.

Plaintiffs' categorical allegations are, therefore, neither clear nor effective. While reviewing plaintiffs' Complaint and briefing, the Court was left to wonder which individual defendants plaintiffs were referring to, knowing that various defendants have different roles and responsibilities in State forest management. Id. at ¶¶ 36-41. Categorical allegations are particularly problematic considering the legal standard of these motions, which requires facts sufficient to state a plausible – not merely conceivable – claim on its face. Twombly, 550 U.S. at 570. Defendants suggest that the Court resolve this matter by examining the allegations of conduct that pertain specifically to the State Lands to determine whether a proper claim has been stated against them. Defs.' Reply to Mot. Dismiss at 18-19. This seems a prudent approach.

The State Land Board oversees the management of the Department of Lands forests, which includes nearly all of Elliot State Forest and two percent of Clatsop State Forest. Compl. ¶¶ 39, 82, 83. However, the State Land Board delegates its management to the Oregon Department of Forestry, including planning and authorization of logging activities and AOP's, in

Elliot State Forest. Id. at ¶ 83. Director of State Lands Louise Solliday "also oversees the management of Department of State Lands Forests" and "assists her Department in carrying out the work of the State Land Board." Id. at ¶ 40. It appears that State Lands has retained direct management over only two percent of Clatsop State Forest. Id. at ¶ 82. However, while plaintiffs list specific timber sales on MMMA's in Clatsop Forest which could, hypothetically, support a plausible claim, there are no facts which necessarily connect those MMMA's with the two percent that State Lands appear to actively manage. Id. at ¶ 166. Furthermore, the Oregon Board of Forestry adopted the Northwest FMP which includes all of Clatsop State Forest, so based on the Complaint, it is impossible to say what role, if any, State Lands has in actively managing land in Clatsop State Forest.

The Court is equally unable to find facts sufficient to maintain a claim against State Lands under a proximate cause analysis. It is well accepted that proximate cause is an element of ESA Section 9 claims. Babbit v. Sweet Home Chapter of Comtys., 515 U.S. 687, 700 n.13 (1995); see also Seattle Audobon Soc'y v. Sutherland, 2007 WL 13000964, *11 (W.D. Wash. May 1, 2007)("Sweet Home established that proximate causation is a relevant consideration of the ESA inquiry"). The ESA's language itself

Page 20 - OPINION & ORDER

infers proximate causation: "it is unlawful for any person . . . to commit . . . or cause to be committed [an ESA violation]." 16 U.S.C. § 1538(g). In the context of the ESA, proximate cause issues entail determining whether the alleged injury – here, take of marbled murrelets – is fairly traceable to the challenged action of Defendants. See Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc., 528 U.S. 167, 180-81 (2000).

Plaintiffs allege that, by delegating management of Elliot State Forest and a portion of Clatsop State Forest, State Lands proximately caused the alleged injury when that land is managed by a third party in accordance with policies which proximately cause take. Pls.' Resp. to Mot. Dismiss at 32. Plaintiffs cite several cases where state officials have been found liable under the ESA for causing take under a proximate cause theory. Id. at 23-24. However, the common thread of those cases is that liability was established by the state actor(s) who directly authorized the conduct which caused take. For example, in Seattle Audobon, the court found that state foresters could be liable for a take of spotted owls by approving certain forest applications, which was a condition precedent to logging. 2007 WL 1300964 at *12. Similarly, a state forester was enjoined for directly authorizing timber sales that were reasonably likely to result in

Page 21 – OPINION & ORDER

take of coho salmon in Pac. Rivers v. Brown, 2002 WL 32356431, *12 (D. Or. Dec. 23, 2002). In Strahan v. Coxe, 127 F.3d 155, 163-64 (1st Cir. 1997), state officials were liable for issuing commercial fishing licenses which were likely to harm northern right whales.

These cases illustrate that state officials can indeed be liable for directly authorizing third-party activities, such as logging, that are likely to result in take. However, at least in regards to State Lands, plaintiffs want to go further and find liability beyond the direct authorization of third-party activities. Essentially, plaintiffs ask the Court to find that the State Lands is liable by authorizing a third party, in this case the Board of Forestry and Department of Forestry, to authorize a fourth party (private loggers) to conduct activities which are likely to cause take. While it may be true that proximate cause can involve more than a single cause, plaintiffs' allegation lacks specificity. For example, plaintiffs argue that their Complaint alleges actionable conduct, but the examples plaintiffs provide are paragraphs which employ the categorical "defendants," and, as discussed above, are therefore not persuasive in establishing specific action by State Lands. Plaintiffs' only remaining allegation is that State Lands is responsible for the vague task of "overseeing management," but

Page 22 - OPINION & ORDER

actual management appears to be carried out by the Board of
Forestry and Department of Forestry. Compl. ¶¶ 39, 40, 82, 83.

To establish proximate causation, plaintiffs must still
present a direct relation between the injury asserted and the
injurious conduct alleged, and the link between the two cannot be
too remote, purely contingent, or indirect. See Day v. United
Parcel Serv., 829 F.Supp.2d. 969, 975 (D. Or. 2011)(citing Hemi
Group, LLC v. City of N.Y., 130 S. Ct. 983, 989 (2010)(internal
quotations omitted)). Plaintiffs do not allege that State Lands
have engaged in misconduct by directly authorizing logging
activity which causes take, or by authorizing the Board of
Forestry and Department of Forestry to manage State Lands'
forests. Further, plaintiffs do not allege that State Lands has
engaged in misconduct by developing or adopting the FMP's, IP's,
or AOP's. In fact, the Court can find no allegations of
misconduct specifically attributable to the State Lands in the
Complaint. Therefore, plaintiffs have not alleged sufficient
facts to state a plausible claim for relief. See Iqbal, 556 U.S.
at 678. The portion of the claim against State Lands is therefore
dismissed.

## VI. District Foresters

Defendants argue that plaintiffs have also failed to
establish a causal link between the IP's and AOP's that call for

increased logging, and the specific timber sales that allegedly violate the ESA. Defs.' Mem. in Supp. of Mot. Dismiss. at 11-12. The Complaint alleges that the District Foresters are responsible for approving and implementing IP's and AOP's, ensuring compliance with the ESA, and approving the designs of marbled murrelet reserves (MMMA's). Compl. ¶ 41. The issue, then, is whether plaintiffs have alleged facts sufficient to show that the District Foresters have proximately caused take by approving/implementing IP's and AOP's, proximately caused take by designing/approving MMMA's, or otherwise failing to ensure compliance with the ESA.

Unlike the allegations against the State Lands defendants, plaintiffs' allegations against the District Foresters are supported by facts that create a plausible claim for relief based on proximate causation. First, the District Foresters are alleged to have directly developed and approved District IP's and AOP's that have recently been revised to increase timber harvests. Id. at ¶¶ 41, 81, 136-51. IP's, and particularly AOP's, directly dictate the amount of logging authorized by describing "smaller-scale, more specific management activities within the planning area." Pls.' Resp. to Mot. Dismiss at 11 (quoting OAR 629-035-0030(1)). The AOP's include "detailed specifications for each [of the] individual timber sales, including the location, acreage,

Page 24 - OPINION & ORDER

type of harvest prescription (e.g. clearcut or thinning), and identification of [MMMA's]" implicated by each sale. Id.; Compl. ¶ 81. District Foresters, moreover, are tasked with approving the design of MMMA's pursuant to certain guidelines, including the State's "take avoidance" policy. Compl. ¶¶ 41, 122-123. In the Court's view, the District Foresters' duties are directly linked to the subsequent timber sales. Thus, plaintiffs have presented facts sufficient to allege that the State Foresters may proximately cause take by approving the design of MMMA's and specifying timber sale units which do not comply with ESA requirements, and result in take when those units are sold. See, e.g., Compl. ¶¶ 163-66, 169-70, 179, 181-83, 186-88, 195-96.

While it is unclear if it is the State Forester or the District Foresters who "create" timber sale units, the Court construes the facts in the light most favorable to plaintiffs for the purpose of this motion, and finds that insofar as the District Foresters approve/adopt/implement AOP's – which set out detailed specifications for timber sales and MMMA's – plaintiffs have sufficiently stated a claim. Although the Court understands the link between the District Foresters' actions and timber sales as perhaps somewhat more attenuated than the connection between the State Forester's actions and timber sales, the District Foresters' ESA compliance requirement creates a connection

Page 25 – OPINION & ORDER

between their approval of MMMA's designs, specification of timber

sale units, and take that ensues from the sales that withstands

dismissal at this early stage of litigation. Therefore, the

District Foresters shall remain parties to this suit.

Finally, the court declines to further explore defendants'

"last-link" proximate cause theory at this time. The 12(b)(6)

motion explores simply whether Plaintiffs have sufficiently pled

facts which could establish liability based on proximate cause;

these matters were determined in the foregoing discussion without

recourse to defendants' "last-link" analysis.

## VII. "Take Avoidance" Policy

Defendant-intervenors submit that plaintiffs have alleged an

independent cause of action against the State's take avoidance

policies. Indeed, plaintiffs alleged that the "'no-take' policy

is causing the take of marbled murrelets." Compl. ¶ 190.

Defendant-intervenors argue that insofar as plaintiffs have

alleged an independent claim against the no-take policy, they

have failed to state a claim because citizen suits brought under

the ESA are limited to actions seeking to enjoin a person who is

in violation of the act. Plaintiffs maintain that they have

indeed alleged that the state's no-take policies cause take, but

that plaintiffs are nonetheless "not raising a 'facial-challenge'

to the State's policies." Pls.' Resp. to Mot. Dismiss at 35.

Under Section 11(g)(1)(A) of the ESA, citizen suits are limited to actions seeking "to enjoin any person, including the United States and any other governmental instrumentality or agency" who is in violation of the Act. 16 U.S.C. § 1540(g)(1)(A). Defendant-intervenors suggest that when applied to Section 9 of the ESA, Section 11(g)(1)(A) only allows citizen suits seeking to enjoin a person from causing "harm": an "act which actually kills or injures wildlife." 16 U.S.C. § 1538(a)(1)(B), (g); 50 C.F.R. § 17.3. However, defendant-intervenors' interpretation of these statutes involves only the application of the ESA's definition of "harm," as applied to take, and ignores the definition of "harass." The ESA prohibits *take* of any such species, not merely *harm* of any such species. 16 U.S.C. § 1538(a)(1)(B). Take can occur via harm *or* harassment; harassment includes any "intentional or negligent act or omission which creates the likelihood of injury to wildlife" by disrupting normal behavior patterns. 16 U.S.C. § 1532(19); 50 C.F.R. 17.3. Therefore, while defendant-intervenors are correct to assert that habitat modification does not constitute harm unless it actually kills or injures wildlife, it is at least conceivable that significant logging operations may nonetheless cause take by harassing wildlife whether or not wildlife is killed or injured, as plaintiffs allege. Compl. ¶ 162. In other words, the Court is

Page 27 - OPINION & ORDER

not convinced by defendant-intervenors' argument that "some concrete actual injury or death must 'actually' occur for habitat modification to constitute *take*." Intervs.' Mem. in Supp. of Mot. Dismiss at 7. Based on the plain language of the statutes, some concrete actual injury or death must occur for habitat modification to constitute *harm*.[1]

Even so, it is unclear to what extent this line of argument benefits plaintiffs. Assuming an omission by a person is actionable under the ESA, plaintiffs maintain that they are not arguing that "the State 'must' adopt policies 'aimed at avoiding violations of section 9'" or that the State's murrelet policies "'are inadequate to prevent take.'" Pls.' Resp. to Mot. Dismiss at 28. Given plaintiffs' assertion that they are also not raising a "facial challenge" to the policy, it is unclear to the Court what plaintiffs hope to achieve by arguing that the policy itself causes take.

Plaintiffs suggest that their take avoidance policy claim is

_____

1    The Court recognizes defendant-intervenors' observation that plaintiffs' allegations are limited to primarily alleging "harm;" however, the Court disagrees, as most of plaintiffs' allegations allege "take." See, e.g., Compl. ¶¶ 4-7, 195-96; Intervs.' Reply to Mot. Dismiss at 9 n.1. At the same time, the Court agrees with defendant-intervenors that plaintiffs misstated the law by asserting that "[h]arm includes both an intentional or negligent act or omission." Pls.' Resp. to Mot. Dismiss at 27. The correct statement of law is that *harass* includes both an intentional or negligent act or omission. 50 C.F.R. § 17.3.

analogous to the claim made in Pac. Rivers, where the State
Forester was alleged to have consistently approved logging
practices that caused take of salmon. Pac. Rivers, 2002 WL
32356431 at *4. However, the Pac. Rivers court found in that
plaintiffs had stated a claim against the *State Forester* because
he approved logging operations which caused take, not against the
*policy* the State Forester was following. Id. at *12. As discussed
above, the Court accepts the proposition that the State Forester
may be liable under the ESA when he directly authorizes an
activity, such as logging, which causes take. The Court is even
willing to accept, at least for purpose of this motion, that
District Foresters who fail to comply with the ESA in approving
MMMA's and otherwise execute and implement operation plans, might
be liable for proximately causing take. However, none of the
cases plaintiffs rely on holds that a policy or regulation alone
causes take.

Therefore, to the extent that plaintiffs are alleging a
claim against the take avoidance policy alone, the Court finds
that, although the policy at issue may be factually relevant to
plaintiffs' claims challenging the District Foresters' creation
of timber units and the State Forester's timber sales, plaintiffs
have not alleged facts which support the independent claim that
the policy itself causes take. That claim is therefore dismissed.

Page 29 - OPINION & ORDER

Finally, since defendant-intervenors have agreed to withhold further argument on the issue of whether or not the preparation of a Habitat Conservation Plan or Incidental Take Permit is potentially an appropriate remedy, the Court declines to address this matter at this time.

## CONCLUSION

State defendants' motion to dismiss (doc. 48) is GRANTED as to Board of Forestry members John Blackwell, Sybil Ackerman, Cindy Deacon Williams, Nils Christoffersen, Tom Insko, Gary Springer, and Steve Wilson on grounds of legislative immunity; and as to State Land Board members John Kitzhaber, Ted Wheeler, Kate Brown, and Director of the Department of State Lands Louise Solliday for failure to sufficiently plead a claim under the ESA. The motion is DENIED as to State Forester Doug Decker and District Foresters Tom Savage, Jim Young, Andy White, and Dan Goody. Defendant-intervenors' motion to dismiss (doc. 50) is GRANTED with regard to the "take avoidance" policy and DENIED in all other respects. The parties' requests for oral argument are DENIED as unnecessary. Finally, plaintiffs are GRANTED leave to file an amended complaint within twenty days of the date of this opinion.

IT IS SO ORDERED.

Dated this ____19ᵗʰ____ of November 2012.

_____
Ann Aiken
United States District Judge